IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| THE PASSAVANT MEMORIAL AREA HOSPITAL ASSOCIATION, an Illinois not-for-profit corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 11-CV-3116 |
| LANCASTER POLLARD & CO., an Ohio corporation; LANCASTER POLLARD ASSET MANAGEMENT, LLC, an Ohio limited liability company; and STEVEN W. KENNEDY, JR., | ) ) ) ) ) ) ) | |
| Defendants and Third Party Plaintiffs, | ) ) ) ) | |
| v. | ) ) | |
| JASON L. GEORGE and PECK, SHAFFER & WILLIAMS, LLP, | ) ) ) ) | |
| Third Party Defendants. | ) ) | |

**OPINION**

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Plaintiff, The Passavant

Memorial Area Hospital Association's (Passavant) Motion for Leave to File

a Third Amended Complaint (d/e 80) (Motion). Passavant seeks to add

direct claims against third party Defendants Peck, Shaffer & Williams, LLP

(Peck, Shaffer), and Jason L. George.  Peck, Shaffer oppose the Motion on the grounds that the amendment would be futile and that the amendment is an improper attempt to add Peck, Shaffer as a non-diverse party that would destroy diversity jurisdiction.  Peck, Shaffer disputes whether its joinder would destroy diversity, but argues that if the Court would so find, then the joinder is improper.  Passavant argues that the claims against George and Peck, Shaffer are not futile and that joinder is proper even though joinder will destroy diversity jurisdiction.  As explained below, Passavant's claims against George and Peck, Shaffer are not futile, and Peck, Shaffer's joinder will not destroy diversity.  Thus, the Motion is ALLOWED.

## BACKGROUND

A       Original Complaint

Passavant's original Complaint alleges claims against Defendants Lancaster Pollard & Co., Lancaster Pollard Asset Management LLC (collectively Lancaster), and Steven Kennedy.  <u>Notice of Removal (d/e 1)</u>, Exhibit 1, <u>Complaint and Request for Jury Trial (Complaint)</u>.  Passavant alleges that it is a not-for-profit corporation located in Jacksonville, Illinois. <u>Complaint</u>, ¶ 1.  Lancaster provides financial advisory and bond underwriting services.  Lancaster is located in Columbus, Ohio.  Kennedy is a Vice President and investment banker at Lancaster.  Kennedy is a resident of Ohio.

Passavant alleges that the Defendants acted as Passavant's financial advisor and bond underwriter. Attached to the Complaint is the Investment Advisory Agreement between Lancaster and Passavant. Complaint, Exhibit E, Lancaster Pollard Investment Advisory Group Investment Advisory Agreement dated December 14, 2006 (Lancaster Agreement). Under the Lancaster Agreement, Lancaster provided financial advisory and asset management services to Passavant. Lancaster Agreement, ¶ 1.[1] The Lancaster Agreement set forth Lancaster's fiduciary relationship with Passavant:

> 7. Fiduciary Responsibilities. It is agreed that the sole standard of care imposed upon [Lancaster's Investment Advisory Group] by this Agreement is to act with care, skill, prudence, and diligence under the circumstances then prevailing that a prudent investor acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character with like aims.

Lancaster Agreement, ¶ 7. Defendant Kennedy managed Lancaster's relationship with Passavant. Complaint, ¶ 5.

Defendants also provided bond underwriting services in connection with a bond issue in 2006. Id. ¶ 8. As part of the bond issue, and upon Kennedy's advice, Passavant entered into a bond interest rate swap agreement (Passavant Swap Agreement) with Lehman Brothers Special

---

[1] Lancaster Investment Advisory Group is a registered trade name of Defendant Lancaster. Complaint, ¶ 4.

Financing, Inc. (Lehman), on September 21, 2006. The Swap Agreement was a hedge agreement that limited Passavant's exposure to changes in interest rates. Id. ¶¶ 11-12.

On September 15, 2008, Lehman filed bankruptcy. On October 1, 2008, Lancaster and Kennedy allegedly prepared letters for Passavant's signature giving Lehman notice that the filing of bankruptcy constituted a default under the Passavant Swap Agreement. Lancaster and Kennedy allegedly instructed Passavant to sign the prepared letter and to send the letter by facsimile transmission (fax) to Lehman. Passavant did so. Id. ¶ 20.

On October 21, 2008, Lancaster and Kennedy allegedly prepared a letter for Passavant's signature notifying Lehman that the Passavant Swap Agreement was terminated due to the default. Id. ¶ 22. Lancaster and Kennedy allegedly instructed Passavant to sign the prepared letters and fax the letter to Lehman. Passavant did so. Id. ¶ 22.

On March 30, 2009, Lehman asserted that it had no record of receipt of a notice from Passavant terminating the Passavant Swap Agreement. Lehman asserted that notice by fax was improper because the Passavant Swap Agreement stated that notices must be mailed and cannot be sent by fax. Id. ¶¶ 27-31. Passavant settled the dispute with Lehman by paying $2,975, 000.00. Id. ¶ 36. Passavant's original Complaint sought to

recover the $2,975,000.00, plus punitive damages, from Lancaster and Kennedy under various theories. Id. Counts I-V.

B.  Procedural History

Passavant filed this action in Morgan County, Illinois, Circuit Court against Defendants Lancaster and Kennedy. The Lancaster Defendants removed this matter to this Court under this Court's diversity removal jurisdiction. Notice of Removal (d/e 1), Exhibit 1, Complaint and Request for Jury Trial (Complaint). Lancaster and Kennedy then filed a third party action against their attorneys Peck, Shaffer and George. George is a partner in Peck, Shaffer. Third-Party Complaint and Jury Demand (d/e 7) (Third-Party Complaint).[2] George is a resident of Ohio.

Peck, Shaffer has several offices, including one in Chicago, Illinois. In 2011, Peck, Shaffer had two "contract partners" at the Chicago office, George D. Buzard and Thomas C. Smith. As contract partners, Buzard and Smith owned no equity interest in the partnership, they did not share in the profits or losses of the partnership, they had no authority to participate in the management of the partnership, and they were paid income fixed by contract. Memorandum of Peck, Shaffer & Williams LLP and Jason L. George, Esq. Opposing the Motion of the Passavant Memorial Area

---

[2] The Third-Party Complaint also named Peck, Shaffer associate Allison Binkley as a defendant. The claims against her have been dismissed. Agreed Order Dismissing Third-Party Defendant Allison M. Binkley Without Prejudice (d/e 59).

Hospital Association to File Third Amended Complaint (d/e 82) (Response), Attached Affidavit of Thomas Freeman, ¶¶ 6-7.  Smith became an equity partner on January 1, 2012.  Response, at 13 n.7.

On August 1, 2011, Passavant filed an Amended Complaint in which Passavant asserted claims directly against Peck, Shaffer and George. Amended Complaint and Request for Jury Trial (d/e 30).  George and Peck, Shaffer moved to strike the Amended Complaint because the time to amend as of right had passed, and Passavant did not secure leave to amend.  Motion of Peck, Shaffer & Williams LLP to Strike the Amended Complaint (d/e 31) (Motion to Strike); see Fed. R. Civ. P. 15(a).  The Court allowed the Motion to Strike because Passavant failed to secure leave to amend, but the Court gave Passavant leave to file its Amended Complaint. Text Order entered September 30, 3011 (Text Order).  Passavant filed its Second Amended Complaint and Request for Jury Trial (d/e 60) (Second Amended Complaint) on November 21, 2011.

On December 5, 2011, Peck, Shaffer and George moved to reconsider the Text Order because Peck, Shaffer wished to oppose granting Passavant leave to amend.  Motion of Peck, Shaffer & Williams LLP and Jason L. George, Esq. to Reconsider the September 30, 2011 Text Order Granting Leave for the Passavant Memorial Area Hospital Association to File an Amended Complaint Adding Peck, Shaffer &

Williams LLP and Jason L. George Esq., as Defendants (d/e 65) (Motion to Reconsider).

On January 20, 2012, the Court allowed the Motion to Reconsider and struck the Second Amended Complaint. The Court granted Passavant leave to file a motion for leave to file an amended complaint. Opinion entered January 20, 2012 (d/e 78), at 8. Passavant has now filed the Motion. Peck, Shaffer and George have filed their opposition to the Motion. Memorandum of Peck, Shaffer & Williams LLP and Jason L. George., Esq. Opposing the Motion of the Passavant Memorial Area Hospital Association to File a Third Amended Complaint (d/e 82). The Lancaster Defendants have elected not to respond to the Motion and so are deemed to have no opposition to the Motion. Local Rule 7.1(B)(2).

C.    Proposed Third Amended Complaint

Passavant seeks to amend the Complaint to add claims against Peck, Shaffer and George. The proposed Third Amended Complaint alleges that George contacted Lancaster to provide legal advice to Lancaster's clients, including Passavant, related to terminating swap agreements with Lehman including the Passavant Swap Agreement. Motion, Exhibit A, Third Amended Complaint and Request for Jury Trial (Third Amended Complaint), Count VI. The Third Amended Complaint alleges that George developed the notices and the procedure used to send

notice of termination to Lehman Brothers.  The Third Amended Complaint alleges that George knew that his advice was intended to benefit Passavant as a client of Lancaster and that Passavant would likely rely on that advice.  The Third Amended Complaint alleges that Passavant knew that the advice came from Lancaster's attorney.  The Third Amended Complaint alleges that Passavant paid Lancaster $5,000.00 for the termination notice and advice, and Lancaster, in turn, paid the $5,000.00 to Peck, Shaffer.  Third Amended Complaint, ¶¶ 82-89.

The Third Amended Complaint alleges that Passavant knew it was paying for legal advice and that it relied on that advice.  The Third Amended Complaint  alleges that George knew that the advice would be relied upon by Passavant.  The Third Amended Complaint alleges that, as a result, Passavant had an attorney-client relationship with George.  The Third Amended Complaint  alleges that George breached the duty of care in giving incorrect advice on the correct manner to send notice of termination to Lehman, and that as a result of that breach, Passavant suffered damages by having to pay Lehman $2,975, 000.00.  Third Amended Complaint, ¶¶ 91-95.  The proposed Third Amended Complaint alleges a claim against Peck, Shaffer on a theory of principal-agency liability because George is a partner in Peck, Shaffer.  Third Amended Complaint, Count VII.

ANALYSIS

Leave to amend pleadings is to be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). The Court may deny leave to file an amendment to a complaint when the amendment would be futile. Foman v. Davis, 371 U.S. 178, 182 (1962). In this case, the amendment does not appear to be futile.

To allege a claim for legal malpractice, Passavant must allege: (1) an attorney-client relationship; (2) a professional duty arising from that relationship; (3) breach of that duty; (4) proximate cause; and (5) damages. Shoemaker v. Gindlesberger, 118 Ohio St.3d 226, 228, 887 N.E.2d 1167, 1169-70 (Ohio 2008); Belden v. Emmerman, 203 Ill.App.3d 265, 268, 560 N.E.2d 1180, 1181 (Ill.App. 1st Dist. 1990). Passavant sufficiently alleges an attorney-client relationship between itself and George. George provided the advice directly to Lancaster, which in turn, transmitted the advice to Passavant. Passavant paid Lancaster, which in turn, paid George. Passavant alleges that George performed the services knowing that the advice would be communicated to Lancaster's clients, including Passavant.

The sufficiency of these allegations depend to some degree on whether Ohio or Illinois law applies to the question of whether an attorney-

client relationship exists.³ Under Illinois law, an attorney owes a duty to a third party, such as Passavant, when "the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party." Pelham v. Gresheimer, 92 Ill.2d 13, 21, 440 N.E.2d 96, 100 (Ill. 1982). The Illinois Supreme Court specifically rejected the requirement that the third party demonstrate that it was in privity with the direct client of the attorney. Pelham, 440 N.E.2d at 99. Passavant alleges that Lancaster hired George to provide advice on how to terminate swap agreements for the benefit of Lancaster's clients including Passavant. Under the Illinois Supreme Court's decision in Pelham, Passavant sufficiently alleges that George's attorney-client relationship with Lancaster extended to Passavant.

Ohio requires privity between the attorney's client (in this case, Lancaster) and the third party (in this case, Passavant), to extend the attorney-client relationship to the third party,

> [A]n attorney may not be held liable by third parties as a result of having performed services on behalf of a client, in good faith,

---

³The parties disagree on the applicable law. See Memorandum of Peck, Shaffer & Williams LLP and Jason L. George, Esq. Opposing the Motion of Passavant Memorial Area Hsopital Association to File a Third Amendd Complaint (d/e 82) (Peck, Shaffer Response) , 6; Plaintiff, The Passavant Memorial Area Hospital Association's Response to Third-Party Defendants, Jason L. George and Peck Shaffer & Williams, LLP's Motion to Dismiss the Second Amended Complaint (d/e 75), at 7 n.3. The Court does not address the conflicts of law issue at this stage because the parties have not briefed the issue, and the issue does not affect the outcome of the Motion. The differences in Illinois and Ohio law regarding establishing an attorney-client relationship, however, may affect the outcome of the claim later in the proceeding.

unless the third party is in privity with the client for whom the legal services were performed.

Simon v. Zipperstein, 32 Ohio St.3d 74, 76, 512 N.E.2d 636, 638 (Ohio 1987).

The facts alleged, when read favorably to Passavant, plausibly show that Passavant was in privity with Lancaster because Lancaster owed Passavant a fiduciary duty as its financial advisor. An attorney's client and a third party to whom the client owes a fiduciary duty, "are in privity . . . such that an attorney-client relationship established with the fiduciary extends to those in privity therewith regarding matters to which the fiduciary duty relates." Arpadi v. First MSP Corp., 68 Ohio St.3d 453, 458, 628 N.E.2d 1335, 1339 (Ohio 1994).[4] Paragraph 7 of the Lancaster Agreement, quoted above, sets forth the standard of care Lancaster was required to meet in fulfilling its fiduciary duty to Passavant.[5] Thus, the Third Amended Complaint plausibly alleges that the attorney-client relationship between Lancaster and George extended to Passavant by

---

[4]The cases on which Peck, Shaffer and George rely do not address the issue of fiduciary relationships establishing privity between the client and the third party. See e.g., New Destiny Treatment Center, Inc. v. Wheeler, 129 Ohio St.3d 39, 44, 950 N.E.2d 157, 162 (Ohio 2011); Landis v. Hunt, 80 Ohio App.3d 662, 672, 610 N.E.2d 554, 560 (Ohio App. 10th Dist. 1992).

[5]The Third Amended Complaint incorporates the Lancaster Agreement by reference. Third Amended Complaint, ¶ _13, Exhibit E. The Lancaster Agreement, thus, is part of the Third Amended Complaint for all purpose. Fed. R. Civ. P. 10(c).

virtue of Lancaster's fiduciary obligations to Passavant under the Lancaster Agreement.

The exact scope of Lancaster's duties under the Lancaster Agreement is a factual issue. At this point, the allegations plausibly show that Lancaster's fiduciary obligations extended to advising Passavant on the proper procedures to terminate the Passavant Swap Agreement when Lehman filed bankruptcy. As a result, the Third Amended Complaint alleges an attorney-client relationship between Passavant and George under either Illinois or Ohio law.[6]

Passavant alleges the remaining elements of its claim against George. Passavant alleges that George had a duty to provide proper advice; George breached that duty by incorrectly advising Passavant to give notice by fax; the breach of duty was the proximate cause of failure of Passavant's attempt to terminate the Passavant Swap Agreement; and Passavant suffered injury thereby.

Peck, Shaffer and George argue that George's alleged breach of duty did not cause any injury. They argue that, under applicable New York law, the notice was effective upon receipt regardless of the terms of the Passavant Swap Agreement. They further argue that notice by fax was

---

[6] The Court does not mean to preclude the possibility that privity may also be established on some other basis.

proper for termination under a separate clause in the Passavant Swap Agreement unrelated to the default clauses.

Both of these arguments assume that Lehman actually received the fax notice. The cases cited by Peck, Shaffer and George hold that actual notice is sufficient even if the notice does not comply with a contractual notice provision. Rockland Exposition, Inc. v. Alliance of Automotive Service Providers of New Jersey, 706 F. Supp.2d 350,360 (S.D.N.Y. 2009). The Passavant Swap Agreement also allows notice by fax in circumstances other than notices of default and termination based on default. Notice by fax, however, is effective upon receipt by the "responsible employee" and the sender has the burden to prove receipt and that burden "will not be met by a transmission report generated by the sender's facsimile machine." Complaint, Exhibit B, ISDA Master Agreement, ¶ 10(a)(iii). Lehman denied ever receiving the faxed notices from Passavant. Third Amended Complaint, ¶¶ 31-32, 35. Thus, the Third Amended Complaint plausibly alleges that the notice to Lehman was not effective under any circumstances, and the ineffective notice was the proximate cause of Passavant's injury.[7] The Third Amended Complaint is not futile.

---

[7]The Third Amended Complaint also alleges that the notices were notice of default and notices of termination for default. Third Amended Complaint, ¶¶ 24-29. These allegations plausibly show that the notices were subject to the provisions in the Passavant Swap Agreement that did not allow notice by fax. These allegations, if true, could plausibly show that the notice was ineffective regardless of the other termination provisions in the Passavant Swap Agreement.

The Court may still deny the Motion under certain circumstances if joinder of Peck, Shaffer and George as defendants would destroy diversity. When joinder of a nondiverse party would destroy removal diversity subject matter jurisdiction, this Court may either deny joinder or permit joinder and remand the case to state court. 28 U.S.C. § 1447(e); Schur v. L.A. Weight Loss Centers, Inc., 577 F.3d 752, 759 (7th Cir. 2009). Passavant argues that the proposed Third Amended Complaint would destroy diversity because Passavant and Peck, Shaffer are both citizens of Illinois for purposes of diversity jurisdiction. Passavant argues that the Court should nonetheless allow joinder under the relevant considerations and remand the case. See Schur, 577 F.3d at 759.

This Court has carefully considered the matter and concludes that joinder will not destroy diversity. The relevant point in time to determine whether adding a party will destroy diversity is the date that the amended pleading is filed adding the party as a defendant. Lewis v. Lewis, 358 F.2d 495, 501-02 (9th Cir. 1966); China Basin Properties, Ltd. v. Allendale Mut. Ins. Co., 818 F.Supp. 1301, 1303 (N.D. Cal. 1992); Jakes v. MacArthur Co., 2010 WL 1286403, at *2 (W.D. Wisc. March 26, 2010); Royal Travel, Inc. v. Shell Management Hawaii, Inc., 2009 WL 2025320, at *2 (D. Hawaii July 10, 2009). Once the Court has diversity jurisdiction, subsequent changes in a party's status will not affect that jurisdiction. Freeport-

McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428-29 (1991).  In this case, Passavant properly filed the Second Amended Complaint on November 21, 2011, pursuant to this Court's Text Order entered September 30, 2011.  This portion of the September 30, 2011, Text Order was later vacated, but Passavant was given leave to file this Motion to pursue the issue.  The Court, therefore, did not dismiss the claims entirely, but retained jurisdiction to decide whether to allow Passavant to proceed on the claims.  The relevant date, therefore, should be November 21, 2011, the date that Passavant first properly filed the claim against Peck, Shaffer.

On November 21, 2011, Peck, Shaffer was a limited liability partnership.  The citizenship of a partnership for diversity purposes is the citizenship of every general partner and limited partner.  Carden v. Arkoma Associates, 494 U.S. 185, 187 (1990).  Buzard and Smith were contract partners in the Chicago office.  The Court does not consider Smith's subsequent change in status to the position of equity partner on January 1, 2012, because the subsequent change in status does not affect diversity jurisdiction.  See Freeport-McMoRan, Inc., 498 U.S. at 428-29.

Peck, Shaffer's contract partners were not general or limited partners under either Illinois or Ohio law.  General and limited partners share a basic characteristic–they share in the ownership of the enterprise and in the profits and losses.  The Illinois Supreme Court explains that, "A limited

partnership is in the nature of an investment. Through his contribution, the limited partner becomes entitled to share in the profits and losses of the partnership, though his share of the losses will not exceed the amount of capital initially contributed by him to the enterprise." Kramer v. McDonald's System, Inc., 77 Ill.2d 323, 332, 396 N.E.2d 504, 508 (Ill. 1979). The Ohio limited partnership statute states that a partnership interest, "means a partner's share of the profits and losses of a limited partnership and the right to receive distributions of partnership assets." Ohio Rev. Code § 1782.01(L). Similarly general partners share in the ownership of the enterprise. Grendell v. Ohio Environmental Protection Agency, 146 Ohio App.3d 1, 13, 764 N.E.2d 1067, 1077 (Ohio App. 9th Dist.,2001) ; Cook v. Lauten, 1 Ill.App.2d 255, 259, 117 N.E.2d 414, 415 (Ill. App. 1st Dist. 1954). General and limited partners share in the risk of ownership. General partners have unlimited liability while limited partners' liabilities are limited to their investments, but both share some risk. Allen v. Amber Manor Apartments Partnership, 95 Ill.App.3d 541, 547, 420 N.E.2d 440, 445 (Ill.App. 1st Dist. 1981); Heinz v. Steffen, 112 Ohio App.3d 174, 183, 678 N.E.2d 264, 270 (Ohio App. 2d Dist. 1996); Hommel v. Micco, 76 Ohio App.3d 690, 696, 602 N.E.2d 1259, 1262 (Ohio App. 11th Dist. 1991).

General partners share additional attributes. They participate in the management of the partnership. They are agents of the partnership and

the other partners, and they owe fiduciary duties to the other partners. See 805 ILCS 206/401(f) ("each partner has equal rights in the management and conduct of the partnership business"); Ohio Rev. Code § 1776.41(F) (same); Grendell, 146 Ohio App.3d at 13, 764 N.E.2d at 1077 (partners share mutuality of agency and mutuality of control); Hommel v. Micco, 76 Ohio App.3d 690, 696, 602 N.E.2d 1259, 1263 (Ohio App. 11th Dist. 1991) (general partners have ultimate control over decisions made in the ordinary course of business); ARTA Group, Inc. v. Salomon Bros. Holding Co., Inc., 288 Ill.App.3d 467, 470-71 680 N.E.2d 769, 772 (Ill.App. 2d Dist. 1997) (general partner owes fiduciary duty to partnership); Saballus v. Timke, 122 Ill.App.3d 109, 116, 460 N.E.2d 755, 760 (Ill. App. 1st Dist. 1983) (partners are mutual agents and fiduciaries of each other).

Peck, Shaffer's contract partners do not share the attributes of a general or limited partner. They are not owners of Peck, Shaffer. They have no investment at risk. They do not share in the profits or losses. They do not participate in management of the partnership. Their compensation is determined by contract. They are employees or independent contractors with a title. They are not partners.

An Illinois court has directly addressed the issue. In Davis v. Loftus, 334 Ill.App.3d 761, 778 N.E.2d 1144, 1152 (Ill.App. 1st Dist. 2002), the Illinois Appellate Court found that an "income partner" in a law firm was not

a partner, and so, had no personal liability for the obligations of the partnership. The Davis Court explained that Illinois looked to the substance of the relationship not the form. Id. at 1151. Similar to the "contract partners" in this case, the "income partner" in Davis did not share in profits or losses, did not participate in management, and was paid a salary plus bonus. The Davis court concluded that such an "income partner" was not a partner. Id. at 1152. Similarly, the contract partners Buzard and Smith were not partners under Illinois law. Given the similarities of Illinois and Ohio partnership law, the Court finds that the Ohio Supreme Court would reach the same conclusion.

The District Court in Massachusetts has specifically addressed whether a contract partner is a partner for purposes of determining citizenship for diversity jurisdiction. In Morson v. Kreindler & Kreindler, LLP, 616 F. Supp. 2d 171, 173 (D. Mass. 2009), the plaintiff Morson brought an action in Massachusetts state court against the law firm of Kreindler & Kreindler, LLP (Kreindler). Morson was a citizen of Massachusetts, and Kreindler was a New York limited liability partnership. Kreindler removed the case to the District Court of Massachusetts based on diversity removal jurisdiction. Morson moved to remand because Kreindler had an office in Boston. Anthony Tarricone was the resident agent for Kreindler in Massachusetts and a contract partner. Like Buzard

and Smith, Tarricone had no ownership interest in the partnership, no right to share in profits and losses, no rights to participate in policymaking for the business. Tarricone was paid a fixed salary. Id. at 172. The Court found that Tarricone was really an employee, and as an employee, "his citizenship is irrelevant for purposes of diversity analysis." Id. at 173. The Morson Court applied Massachusetts and New York law, but the principals of New York and Massachusetts partnership law were substantially similar to the Illinois and Ohio principals discussed above. See Id. at 172-73. This Court agrees with the analysis in Morson. Buzard and Smith were employees or contractors, not partners under either Illinois or Ohio law. Their citizenship is not relevant to determining Peck, Shaffer's citizenship.

It is conceivable that Peck, Shaffer could be estopped under some circumstances from denying that Buzard and Smith were partners of the firm.[8] See Morson, 616 F. Supp. 2d at 173. No possibility of estoppel exists here, however. Passavant did not rely on any representations about the partnership status of Buzard and Smith; Passavant did not even select George or Peck, Shaffer to provide legal advice. Furthermore, Passavant's theory of liability against Peck, Shaffer is principal, agent liability for the

---

[8] The Court assumes for purposes of argument only that estoppel would be relevant to determine diversity jurisdiction. The issue has not been briefed by the parties, and the Court makes not ruling on this question.

actions of George. Buzard and Smith were not involved in the matter so their status is irrelevant.

Thus, Peck, Shaffer had no partners who were citizens of Illinois on November 21, 2011. Passavant's joinder of Peck, Shaffer as an additional defendant does not destroy diversity. Moreover, as explained above, the claims in the Third Amended Complaint are not futile. Therefore the Motion is allowed.

WHEREFORE, Passavant Memorial Area Hospital Association's Motion for Leave to File a Third Amended Complaint (d/e 80) is ALLOWED. The Clerk is directed to file the Third Amended Complaint attached to the Motion. Defendants are directed to file their responsive pleadings by April 20, 2012.

ENTER: April 2, 2012

                                _s/ Byron G. Cudmore_
                                  BYRON G. CUDMORE
                       UNITED STATES MAGISTRATE JUDGE