## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| THE PASSAVANT MEMORIAL AREA HOSPITAL ASSOCIATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 11-cv-3116 ) |
| LANCASTER POLLARD & CO., et al., Defendants and Third-Party Plaintiffs, | ) ) ) ) |
| v. | ) ) |
| JASON L. GEORGE, et al., | ) ) |
| Third-Party Defendants. | ) |

## OPINION

SUE E. MYERSC0UGH, U.S. District Judge:

This matter is before the Court on the Motion to Dismiss the Crossclaim Against Jason L. George, Esq. and Peck, Shaffer & Williams LLP Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Motion) (d/e 87). The Motion is DENIED.

## I. FACTS

On April 3, 2012, Plaintiff Passavant Memorial Area Hospital

Association filed a Third-Amended Complaint against Defendants

Lancaster Pollard & Co.; Lancaster Pollard Asset Management, LLC.

(these two Defendants will be referred to collectively as "Lancaster

Pollard");  Steven W. Kennedy, Jr.; Jason L. George; Peck, Shaffer &

Williams, LLP (PSW); and Doe Defendants 1-10.  The Third-Amended

Complaint contains the following allegations.

## A.  *Allegations Relating to Lancaster Pollard and Kennedy*

Passavant is an Illinois not-for-profit corporation that provides

medical services and is located in Jacksonville, Illinois.  Lancaster Pollard

specializes in providing financial advice and financial services to health

care, senior living, and affordable housing organizations.  Kennedy is a

vice president and investment banker with Lancaster Pollard.  PSW is a

law firm at which George was a partner during all relevant times.

In 2006, Passavant was solicited by Kennedy and Lancaster Pollard

to provide bond underwriting and other services relating to Passavant's

stated intention to issue $32,000,000 in tax exempt bonds.  Passavant

engaged Lancaster Pollard for the purposes of entering a bond interest

rate swap agreement with a third party financial institution.  A bond interest swap agreement would serve as a hedge against fluctuations in the interest rates of the bonds issued by Passavant.

On behalf of Passavant, Kennedy and other agents of Lancaster Pollard brokered a bond interest rate swap with Lehman Brothers Special Financing, Inc. (Lehman).  On September 21, 2006, the agreement was executed in three parts, including the ISDA Master Agreement, Schedule, and Confirmation.

On September 15, 2008, Lehman filed for bankruptcy.  Lehman's bankruptcy constituted a default under Paragraph 5(a)(vii) of the ISDA Master Agreement.  Under Paragraph 6(a) of the ISDA Master Agreement, such default allows Passavant to elect to terminate the agreement.  Kennedy, on behalf of Lancaster Pollard, contacted Passavant and advised Passavant to withhold the payment due October 1, 2008 and to await further instructions from Lancaster Pollard. Passavant withheld the payment and awaited further instructions.

On October 1, 2008, Kennedy and Lancaster Pollard provided

Larry Ragel, Passavant's Chief Financial Officer, a letter addressed from Passavant and directed to Lehman.  The letter notified Lehman of its default and stated the reasons Passavant withheld the payments due under the interest rate swap agreement.  The communication to Passavant included an instruction to sign the prepared letter and send the letter to Lehman by facsimile (fax).

On October 20, 2008, Lancaster Pollard and Kennedy requested authorization to act on behalf of Passavant to "unwind" the interest rate swap agreement with Lehman.  Lancaster Pollard and Kennedy were granted such authorization.

On October 21, 2008, Lancaster Pollard and Kennedy provided a second letter to Passavant to be addressed to Lehman on Passavant's letterhead.  This letter was drafted for the purpose of terminating the bond interest rate swap agreement.  Passavant was instructed to send the communication to Lehman by fax.

On November 18, 2008, Lancaster Pollard and Kennedy provided a third letter that was also to be sent to Lehman on Passavant's letterhead.

The third letter provided that pursuant to the ISDA Master Agreement's terms, Lancaster Pollard had used the applicable valuation methods and determined that the termination value of the interest rate swap agreement was $0.  Pursuant to the instructions of Lancaster Pollard and Kennedy, Passsavant signed and faxed this letter to Lehman, wired a payment to Lehman for the amounts that were due and owing prior to the termination notice, and paid Lancaster Pollard $5,000 for its services in terminating the agreement.

On March 30, 2009, Lehman contacted Passavant and asserted it had no record of a notice from Passavant terminating the bond interest rate swap agreement.  Passavant provided fax confirmations showing that the notices had been transmitted to Lehman.  Lehman asserted that notice by fax was not a proper means of delivery because the ISDA Master Agreement specified that such notice must be sent by mail and not by fax.  Eventually, Passavant settled the dispute for $2,975,000.

B. *Allegations Relating to George and PSW*

Passavant alleges that George, a partner in PSW, contacted

Lancaster Pollard to provide legal advice to is clients, including

Passavant, relating to their rights and obligations under their agreements

with Lehman and the procedures for terminating the agreements after

Lehman filed for bankruptcy.  Lancaster Pollard accepted George's offer.

George developed the procedure by which Lancaster Pollard's

clients, including Passavant, would terminate their ISDA Master

Agreements with Lehman.  The procedure developed by George included

the preparation of the written notices and instructions for their

transmittal to Lehman.

According to the Third Amended Complaint, George knew that the

advice he provided to Lancaster Pollard was intended for the benefit of

Lancaster Pollard's clients and that Passavant would likely rely upon that

advice in terminating its agreement with Lehman.  Lancaster Pollard

transmitted George's legal advice to Passavant either in its entirety, or

substantially in the same form as it was generated by George.  Passavant

terminated the bond interest rate swap agreement in accordance with the

advice.  Passavant paid $5,000 to Lancaster Pollard for services related to

the termination of the agreement, including an invoiced amount for

"legal fees."  PSW invoiced Lancaster Pollard $5,000 in legal fees related

to the advice given to Lancaster Pollard's clients to terminate the swap

agreement.

Passavant alleges an attorney-client relationship was established

between Passavant and George.  According to the Third Amended

Complaint, George breached his duty of care by giving incorrect advice

on the correct manner in which to send the notice of termination to

Lehman.  George's erroneous advice resulted in the damages suffered by

Passavant.  Passavant's claim against PSW is based on a theory of

principal-agency liability because George was a partner, and therefore an

agent, of the law firm.

*C.  Lancaster Pollard's and Kennedy's Crossclaim against George and
PSW*

On April 20, 2012, Lancaster Pollard and Kennedy filed their

Answer to the Third-Amended Complaint and Crossclaim against

Defendants George and PSW.  Like the Third Amended Complaint, the

Crossclaim alleges that George, provided advice to Lancaster Pollard on

how to terminate Lancaster Pollard's clients' swap agreements with Lehman.  George knew Lancaster Pollard's clients would likely rely upon and follow his advice.  Lancaster Pollard transmitted the advice provided by George to Plaintiff, and Plaintiff terminated its swap agreement with Lehman in accordance with that advice.  The legal advice provided by George was incorrect.

The Crossclaim states that Passavant's Third Amended Complaint alleges that Passavant had to pay $2,975,000 to settle with Lehman for breach of the swap agreement because Passavant followed advice relayed to it by Lancaster Pollard.  Passavant has demanded judgment against Lancaster Pollard and Kennedy for the amounts it paid to Lehman and all other damages Passavant incurred as a result of following the incorrect legal advice provided by George.  The Crossclaim alleges that if Lancaster Pollard and Kennedy have any liability to Passavant arising out of the attempted termination of Passavant's swap agreement, such liability is the direct result of George's violation of his duties in providing legal advice with respect to the termination of the swap agreements.

Therefore, if judgment is entered against Lancaster Pollard and Kennedy,
George and PSW should be ordered to pay Lancaster Pollard and
Kennedy an amount equal to all sums which may be adjudged against
them and in favor of Passavant.

## II.  LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the
complaint.  Christensen v. Cnty. of Boone, 483 F.3d 454, 458 (7th Cir.
2007).  Under the federal notice pleading standards, "a plaintiff's
complaint need only provide a short and plain statement of the claim
showing that the pleader is entitled to relief, sufficient to provide the
defendant with fair notice of the claim and its basis."  Tamayo v.
Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).  When considering a
motion to dismiss under Rule 12(b)(6), the complaint is construed in the
light most favorable to the plaintiff; all well-pleaded factual allegations
are accepted as true; and all reasonable inferences are construed in the
plaintiff's favor.  Id.  However, a complaint must allege "enough facts to
state a claim to relief that is plausible on its face" to survive a motion to

dismiss.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547, 127 S.Ct.

1955, 167 L.Ed.2d 929 (2007).  For a claim to have facial plausibility, a

plaintiff must plead "factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct

alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173

L.Ed.2d 868 (2009).  "[T]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice."  Id.

Further, the amount of factual allegations required to state a plausible

claim for relief depends on the complexity of the legal theory alleged.

Limestone Dev. Corp. v. Vill. of Lemont, 520 F.3d 797, 803 (7th Cir.

2008).

## III.  ANALYSIS

On May 2, 2012, George and PSW filed the instant Motion in

which they assert that Lancaster Pollard's Crossclaim should be dismissed

for the following reasons: (1) Lancaster Pollard engaged in the

unauthorized practice of law by providing legal advice to Passavant and

therefore may not seek indemnification from George and PSW; (2)

Lancaster Pollard has not stated a viable claim for legal malpractice

against George; and (3) Lancaster Pollard cannot show PSW's

purportedly erroneous legal advice caused damage to Lancaster Pollard.

*A. The Court Will Not Dismiss the CrossClaim Based on the Allegation
Lancaster Pollard Engaged in the Unauthorized Practice of Law*

PSW and George first assert that Lancaster Pollard engaged in the

unauthorized practice of law.  Specifically, they claim that Lancaster

Pollard engaged in the unauthorized practice of law because Lancaster

Pollard: (1) accepted a $5,000 payment from Passavant for the provision

of legal services, and (2) provided Passavant legal documents when it

provided the documents so that Passavant could terminate the swap

agreement.  As a result of this unauthorized practice of law, PSW and

George allege Lancaster Pollard is primarily responsible for any damages

that resulted and indemnification is not available to Lancaster Pollard.

The Court concludes that dismissal of the Crossclaim is

inappropriate because doing so would require the Court to accept PSW's

and George's characterization of the facts over Lancaster Pollard's.  PSW

and George maintain that Lancaster Pollard distributed general advice

from George, an authorized legal professional, to Lancaster Pollard's client for a $5,000 fee.  The allegations in the Crossclaim, which must be taken as true, offer a different version of events.  The Crossclaim alleges that George knew that he was retained by Lancaster Pollard to provide legal advice and that George also knew that Lancaster Pollard's clients, including Passavant, would rely on his legal advice.  Lancaster Pollard also allges that George prepared the written notices for terminating the swap agreements and instructions for their transmittal to Lehman.

Moreover, Passavant has alleged that Lancaster Pollard billed Passavant $5,000 for services related to the termination of the swap agreement, including an invoiced amount for legal fees.  Passavant has also alleged that PSW invoiced Lancaster Pollard $5,000 in legal fees related to advice given to Lancaster Pollard's clients, including Passavant. Lancaster Pollard has admitted these allegations.  PSW and George have denied them.  The fact Lancaster Pollard may have paid PSW the same amount for services related to the termination of the swap agreement could be relevant to rebut PSW's and George's argument that Lancaster

Pollard engaged in the unauthorized practice of law.

Dismissal of the Crossclaim based on the allegation Lancaster Pollard engaged in the unauthorized practice of law would be premature given: (1) the parties' different versions of the facts relating to George's legal advice and the transmission of the advice to Passavant; and (2) the fact that the Court must construe the allegations in the Crossclaim in the light most favorable to the nonmovant.  Lancaster Pollard's allegations allow a plausible inference that George, not Lancaster Pollard, was the party engaged in the practice of law.

B. *Lancaster Pollard's Crossclaim States a Legal Malpractice Claim*

In order "[t]o establish a cause of action for legal malpractice, a claimant must demonstrate the existence of an attorney-client relationship giving rise to a duty, a breach of that duty, and damages proximately caused by that breach."[1]  New Destiny Treatment Ctr., Inc. v. Wheeler, 129 Ohio St.3d 39, 2011-Ohio-2266, 950 N.E.2d 157, ¶ 25. PSW and George claim that Lancaster Pollard has not stated a claim for

---

[1] Both parties have cited Ohio law when addressing whether the Crossclaim states a claim for legal malpractice.

legal malpractice in its Crossclaim.

Specifically, PSW and George argue that "Lancaster Pollard's allegation that the advice may have been inaccurate does not state a claim for legal malpractice under Ohio law, because Ohio courts recognize that '[p]rofessional negligence is not established by proving that a professional opinion turned out to be erroneous.'" PSW and George also argue that George's allegedly erroneous legal advice is not the proximate cause of Passavant's damages for which Lancaster Pollard would be liable because termination of the agreements by facsimile was appropriate and Passavant's settlement was voluntary.[2]

As noted above, the Crossclaim alleges that George was an attorney at PSW and that George offered to provide legal advice for Lancaster Pollard's clients, including Passavant, regarding their rights and obligations under their swap agreements, whether those agreements should and could be terminated, and the procedures for terminating them. George developed a procedure and methodology for terminating

---

[2] Lancaster Pollard agrees that Passavant's claims are without merit.

the agreements and prepared written notices and instructions for the manner of their transmission to Lehman. George knew this information would be forwarded to, and relied upon by, Lancaster Pollard's clients, including Passavant. Accordingly, the Crossclaim plausibly alleges that George owed Lancaster Pollard and Passavant a duty of care. This duty included, but was not limited to, the duty to carefully read Passavant's swap agreement before providing advice with respect to the proper method and means for terminating it. Lancaster Pollard forwarded George's advice to Passavant, and Passavant terminated its swap agreement in accordance with George's advice.

The Crossclaim further states that Passavant has alleged in its Complaint that it followed George's advice which resulted in it having to pay Lehman $2,975,000 to settle its claims for breach of the swap agreement. Passavant has demanded judgment against Lancaster Pollard for the amounts it paid Lehman as a result of following George's incorrect legal advice. Finally, if Lancaster Pollard has any liability to Passavant arising out of the attempted termination of the swap agreements, then

such liability is the direct result of George's violation of the standard of care by, among other things, providing legal advice with respect to the termination of Passavant's swap agreement without even reading the contract.

Lancaster Pollard's Crossclaim adequately states a claim for legal malpractice.  First, contrary to the claims of PSW and George, the Crossclaim alleges more than just that George's advice was incorrect.  The Crossclaim also alleges that George violated his standard of care by giving incorrect legal advice without reading Passavant's swap agreement. George does not contend that a failure to read a contract before advising on its content is not legal malpractice.

PSW and George also contend that Lancaster Pollard has not alleged what George should have done differently.  George maintains that he was asked  for general advice regarding the termination of swap agreements which Lancaster Pollard then took and provided to Passavant as if the general advice pertained to Passavant's specific agreement. However, this characterization differs from Lancaster Pollard's allegation

that George knew that Lancaster Pollard was going to pass the advice on to Passavant and that George prepared the termination notices and instructions for the manner of transmittal to Lehman. Such a dispute regarding the relevant facts is not appropriately resolved at the motion to dismiss stage. As stated when considering a motion to dismiss under Rule 12(b)(6), the facts are construed in the light most favorable to the plaintiff, all well-pleaded factual allegations are accepted as true, and all reasonable inferences are construed in the plaintiff's favor. Tamayo, 526 F.3d at 1081.

Finally, George and PSW allege that Lancaster Pollard has not properly pleaded that George's advice proximately caused Lancaster Pollard's damages because termination of the agreement by facsimile was proper and Passavant voluntarily settled. Lancaster Pollard agrees with George's and PSW's contentions that the agreement could be terminated by facsimile and that Passavant voluntarily settled. In fact, those contentions will be a major part of the dispute between Lancaster Pollard and Passavant. Lancaster Pollard is simply alleging that George and

PSW are liable to Lancaster Pollard if Lancaster Pollard is liable to

Passavant.  Such a contingent counterclaim is proper under Rule 13(g) of

the Federal Rules of Civil Procedure.  See 6 Charles A. Wright, Arthur R.

Miller & Mary Kay Kane, Federal Practice and Procedure,§ 1431, at

281-82 (3d ed. 2010) (Rule 13(g) "does not require that the claim be

mature at the time of pleading;" therefore, "a crossclaim can be

contingent upon the ultimate adjudication of the crossclaimant's liability

to plaintiff").

## IV.  CONCLUSION

For these reasons, the Motion to Dismiss (d/e 87) is DENIED.

This matter is referred back to Judge Cudmore for further pretrial

proceedings.

ENTER: March 15, 2013

FOR THE COURT:

s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE